A90A1970. HARRELL et al. v. LOUIS SMITH MEMORIAL HOSPITAL.
(397 SE2d 746)

BIRDSONG, Judge.

This appeal arises from the granting of summary judgment in favor of appellee, Louis Smith Memorial Hospital (see generally OCGA § 9-11-56 (h)). The children of the deceased brought suit for medical malpractice against the treating physician and the hospital. The hospital asserted, inter alia, the defense of charitable immunity. *Held*:

1. Appellants assert that the trial court erred in making factual findings instead of utilizing the procedures under OCGA § 9-11-56. OCGA § 9-11-52 does not apply to certain actions including all motions except as provided in OCGA § 9-11-41 (b). OCGA § 9-11-52 (b); see generally *Fudge v. Colonial Baking Co.*, 186 Ga. App. 582 (1) (367 SE2d 814); *Karsman v. Portman*, 173 Ga. App. 108 (3) (325 SE2d 608). However, in certain cases when the trial court makes findings of fact and conclusions of law in ruling on motions for summary judgment, it can be "helpful to the appellate courts and instructive to the parties." *Lewis v. Rickenbaker*, 174 Ga. App. 371, 372 (1) (330 SE2d 140). Accordingly, the mere entry of findings of fact and conclusions of law in ruling on a motion for summary judgment does not constitute error per se. Moreover, it appears on the face of the order that

the trial court did apply the test of OCGA § 9-11-56, as it concluded "[t]here are no genuine issues as to any material facts and said defendant is entitled to a judgment as a matter of law." See generally OCGA § 9-11-56 (c). It is the duty of the party asserting error to show it by the record; mere assertions of error in briefs cannot satisfy this duty. *Denny v. Nutt*, 189 Ga. App. 387, 389 (375 SE2d 878). Appellants have failed to carry their burden. In any event, we will review this case using well-established principles of law pertaining to summary judgment. See Division 2 (b), below.

2. Appellants assert the trial court erred in entering summary judgment on behalf of appellee hospital on the grounds of the charitable immunity doctrine.

(a) On summary judgment, movant has the burden of showing there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. When, as in the instant case, movant is a defendant, it has the additional burden of piercing the plaintiffs' pleadings and affirmatively negating one or more essential elements of the complaint. In ruling on a motion for summary judgment, the opposing parties should be given the benefit of all reasonable doubt, and the court should construe the evidence and all *inferences* and conclusions arising therefrom most favorably toward the parties opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843). Yet once the party moving for summary judgment has made out a prima facie case, the burden of proof shifts to the opposing parties who must come forward with rebuttal evidence or suffer judgment against them. *Leah Enterprises v. Chouinard*, 189 Ga. App. 744, 745-746 (377 SE2d 514).

(b) Today, virtually all states have "rejected the complete immunity of charities"; however, Georgia is among a "handful of states" which have "attempted to modify the immunity so that it is retained in some cases but not in others." Prosser & Keeton on Torts (5th ed.), Immunities, § 133. In Georgia an incorporated hospital, primarily maintained as a charitable institution, is not liable for the negligence of its officers and employees, *unless* it fails to exercise ordinary care in the selection of competent officers and servants, or fails to exercise ordinary care in retaining such officers and employees. *Ponder v. Fulton-DeKalb Hosp. Auth.*, 256 Ga. 833 (1) (353 SE2d 515); *Wynn v. Fulton-DeKalb Hosp. Auth.*, 196 Ga. App. 52 (395 SE2d 343).

"[T]he doctrine of charitable immunity . . . does not extend to the corporate or original negligence of the charitable entity in the employment or retention of incompetent employees. . . ." *Y.M.C.A. &c. v. Bailey*, 107 Ga. App. 417, 420 (130 SE2d 242). Moreover, "[t]he failure to exercise ordinary care to provide a sufficient number of competent and adequately instructed employees and the failure to exercise ordinary care in selecting or retaining competent employees

cannot be distinguished." *Y.M.C.A.*, supra. Thus, the doctrine of charitable immunity would not extend to any negligence of the appellee hospital, assuming it qualifies as a charitable entity, in failing to provide a sufficient number of competent and adequately instructed employees for its staff. See *Y.M.C.A.*, supra; *Hipp v. Hospital Auth.*, 104 Ga. App. 174, 177 (2) (121 SE2d 273).

Appellants averred, inter alia, in their complaint that appellee hospital "was at such time required to provide a staff adequately trained to exercise a reasonable degree of medical care and skill in the delivery of health care," that it "failed to provide staff who were qualified to adequately diagnose and to treat myocardial infarction," and that it "failed to properly refer [deceased] to a facility capable of handling acute myocardial infarctions at a proper time." Compare *Hipp*, supra. This pleading was sufficient to place appellee hospital on reasonable notice of an averment of inadequate staffing beyond the pale of the doctrine of charitable immunity. Thereafter, the record reflects that the appellee hospital failed to pierce appellants' pleadings as to these particular averments of inadequate staffing. In fact, the president of the hospital in his deposition testimony made several admissions which per se would create a genuine issue of material fact as to whether the hospital, particularly its emergency room, was adequately staffed with personnel who were competent and adequately instructed. As appellee hospital failed to pierce appellants' pleadings as to the averment of inadequate staffing, appellants were entitled to rely on their pleadings and were not required to come forward with rebuttal evidence or suffer judgment against them. See Division 2 (a) above. Accordingly, the trial court erred in granting summary judgment for the appellee hospital.

(c) In its order, the trial court concluded that decedent was not a "paying patient." See generally *Cutts v. Fulton-DeKalb Hosp. Auth.*, 192 Ga. App. 517 (1) (385 SE2d 436); *Wynn*, supra; compare *Fulton-DeKalb Hosp. Auth. v. Fanning*, 196 Ga. App. 556 (396 SE2d 534) (principal and concurring opinions). As this issue and the related issue of non-charitable assets undoubtedly will be litigated also at trial, we will address these issues in the interest of judicial economy. Appellants averred in the complaint that decedent, "while receiving care at [appellee] Louis Smith Memorial Hospital and by Dr. Guy Mann was at all times a *paying patient*." (Emphasis supplied.) In its responsive answer to appellants' complaint, appellee hospital expressly admitted this averment, and did not thereafter timely and effectively withdraw its admission. See generally Green, Ga. Law of Evid. (3rd ed.), Admissions, § 238.1. "The averment in the answer stands as a solemn admission in judicio, which the defendant may not controvert by the introduction of evidence." *Y.M.C.A. v. Bailey*, 112 Ga. App. 684, 689 (146 SE2d 324). Moreover, we find no merit in appellee's assertion

that its admission by way of pleadings was not an admission in judicio because the admission only constituted a conclusion of law or fact, rather than the admission of a factual matter. See generally *Conaway v. American Guarantee &c. Co.*, 189 Ga. App. 194, 195 (375 SE2d 144). The manner in which the averment was crafted in the complaint in this case expressed a factual matter, and appellee's answer constituted an unconditional admission of the fact that deceased was a "paying patient." Appellee cannot be heard to complain on appeal regarding the effect of its own pleading procedures before the trial court.

Moreover, assuming arguendo the admission in appellee's pleading had not met the criteria of an admission in judicio, as the admission in pleadings nevertheless remained in effect, it would appear to constitute evidence for purpose of summary judgment. Compare *Behar v. Aero Med Intl.*, 185 Ga. App. 845 (1) (366 SE2d 223); see also OCGA § 9-11-56 (c); *Four Square Constr. Co. v. Jellico Coal &c. Co.*, 145 Ga. App. 650 (244 SE2d 612); *Wood v. Brunswick Pulp &c. Co.*, 119 Ga. App. 880, 881-882 (169 SE2d 403); cf. OCGA § 9-11-36 (b).

(d) The trial court further held that even if decedent met the three-prong test of a "paying patient" (see generally *Wynn*, supra), appellee hospital does not have "non-charitable assets" from which to satisfy a tort liability judgment. Among the trial court's findings of fact in support of this legal conclusion were that the appellee hospital had a substantial *loss* in its operation for the year 1987 and had no assets or properties which are not *employed* in its total operation used for its charitable purpose.

Some cases have stated that recovery is limited to non-charitable "assets." See, e.g., *Medical Center Hosp. Auth. v. Andrews*, 250 Ga. 424, 426 (2) (297 SE2d 28); *Medical Center Hosp. Auth. v. Andrews*, 162 Ga. App. 687, 689 (2) (292 SE2d 197), aff'd. 250 Ga. 424 (297 SE2d 28). Others have stated that recovery is limited to the extent of "income" derived from patients who paid for their services. Compare *Patterson v. Fulton-DeKalb Hosp. Auth.*, 192 Ga. App. 167, 168 (384 SE2d 205) with *Fulton-DeKalb Hosp. Auth. v. Alexander*, 193 Ga. App. 505 (2) (388 SE2d 372). Some cases state "recovery [is] to be satisfied only out of the noncharitable assets or income." *Y.M.C.A.*, supra at 112 Ga. App. 687; *Morehouse College v. Russell*, 109 Ga. App. 301, 317 (136 SE2d 179). These cases are not necessarily in conflict, as the language in each case was tailored to address the circumstances then in issue. Moreover, the term "assets," employing its general meaning, encompasses "[p]roperty of all kinds, real and personal, tangible and intangible. . . . The entire property of a person, association, corporation, or estate that is applicable or subject to the payment of his or her or its debts." Black's Law Dictionary (5th ed.). However, the scope of the test was further clarified in *Ponder*, supra

at 834, where the Supreme Court stated that although a "paying patient" exception exists to the doctrine of charitable immunity, "the recovery is limited to income derived from non-charitable *sources*." (Emphasis supplied.) Accord *Morton v. Savannah Hosp.*, 148 Ga. 438 (3) (96 SE 887); *Robertson v. Executive Committee &c.*, 55 Ga. App. 469 (1) (190 SE 432). Recovery has never been limited solely to *net income* derived from non-charitable *profits*. In *Fulton-DeKalb Hosp. Auth. v. Alexander*, supra at 506 (2), appellant contended, as in this case, that "because all the money which comes into its coffers is expended in furtherance of its mission to provide medical services to the disadvantaged, it has no non-charitable assets which could be subjected to a judgment in appellee's favor. . . ." This court rejected this argument in *Alexander* holding "*Morton* [,supra,] permits a judgment to be satisfied from the income derived from paying patients, not 'assets.' " (Emphasis omitted.) Id.; compare *Robertson*, supra at 470 (3). In fact, certain language in *Morton* is broader and holds "the judgment can only subject *funds* derived strictly from non-charitable pay patients. . . ." (Emphasis supplied.) Id. at 438 (5), 441 (5). "Hence the test is not the use to which the income is put [e.g., payment of charitable expenses], but the nature of the source from which the income is derived." *Mack v. Big Bethel &c. Church*, 125 Ga. App. 713, 715 (188 SE2d 915). (We note that in this appeal the sufficiency of the complaint is not in issue as it was in *Fulton-DeKalb Hosp. Auth. v. Alexander*, supra; however, appellee's answer reflects a first defense that the complaint fails to set forth a claim against the hospital upon which relief can be granted. Suffice it to say, in the case sub judice the complaint avers that deceased was a paying patient, thereby placing appellee hospital on reasonable notice of the existence of "income" from at least that *source*. As discussed in Division 2 (c), above, this averment was duly admitted by appellee hospital.)

The testimony by way of deposition of the custodian of all patient accounts of appellee hospital admits that the hospital has several categories of patients and that among them are *self-pay* patients and patients whose accounts are paid by insurance and other commercial sources. It may reasonably be inferred from this testimony (see Division 2 (a), above) that the hospital has received and is receiving income from these paying patients within the meaning of *Morton*, supra, and *Fulton-DeKalb Hosp. Auth. v. Alexander*, supra. A defendant claiming a charitable immunity can be held liable to the extent of its income derived from non-charitable sources. *Medical Center Hosp. Auth. v. Andrews*, 162 Ga. App., supra. The income from paying patients has been held to be a non-charitable asset, that is, it is derived from a non-charitable *source. Andrews*, supra; compare *Morton*, supra; *Alexander*, supra; *Patterson*, supra at 168; *Robertson*, supra; see generally *Mack*, supra at 714 and cases therein

cited where the income was derived from non-charitable pay patients.

Further, the affidavit of the president of appellee hospital contains an admission that the hospital has certain property from which rental *income* is received and, although apparently not operating at a profit, is property on which taxes must be paid. Under the charitable immunity doctrine, "the test as to whether property is subject to execution of a judgment is whether the property is subject to taxation. The rental property under consideration here would not be exempt from taxation and, applying the above test, could not be classified as a charitable asset immune from execution of a judgment. Hence defendant has not carried its burden of showing that it has no assets other than charitable assets . . . in the motion for summary judgment, and the judgment sustaining it must be reversed." (Citations and punctuation omitted.) *Mack*, supra at 715-716.

Accordingly, the trial court erred in concluding that appellee hospital "does not have 'non-charitable assets' from which to satisfy a tort liability judgment." Appellee hospital would be liable to the extent of income derived from non-charitable sources, as above discussed, and "[t]he extent of the hospital's liability would therefore be an issue for jury determination." *Andrews*, supra at 689.

*Judgment reversed. Banke, P. J., and Cooper, J., concur.*

DECIDED OCTOBER 5, 1990.

*Sutton & Slocumb, Berrien L. Sutton, B. Jean Crane*, for appellants.

*Wade H. Coleman, William U. Norwood III*, for appellee.